```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
GREGORY HUBBS,

                    Plaintiff,                    MEMORANDUM & ORDER
                                                  11-CV-6353(JS)(WDW)
          -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, SERGEANT
ANDREW WALTHER #S-63, DEPUTY
SHERIFF KEITH MORAN #480, DEPUTY
SHERIFF THOMAS GUYDISH #490,
DEPUTY SHERIFF ALLISON ZACCINO
#418, and JOHN DOE DEPUTY SHERIFF
OFFICERS 1-2,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Leo Glickman, Esq.
                    Stoll, Glickman & Bellina, LLP
                    475 Atlantic Avenue, Floor 3
                    Brooklyn, NY 11217

For Defendants
Suffolk County
Sheriff's Dep't
& John Does:        No appearances.

Remaining
Defendants:         Brian C. Mitchell, Esq.
                    Suffolk County Dep't of Law-County Attorney
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, NY 11788
```

SEYBERT, District Judge:

Currently pending before the Court is defendants County of Suffolk (the "County"), Deputy Sheriff Sergeant Andrew Walther, Deputy Sheriff Keith Moran, Deputy Sheriff Thomas Guydish, and Deputy Sheriff Allison Zaccino's (collectively,

"Defendants") motion for summary judgment dismissing the Amended Complaint by plaintiff Gregory Hubbs ("Plaintiff"). For the following reasons, Defendants' motion is GRANTED.

BACKGROUND[1]

The case involves events that occurred on November 10, 2009. (Defs.' 56.1 Stmt., Docket Entry 32-2, ¶ 1.) Plaintiff alleges that he began a conversation with an individual named Anthony Oddone while housed in a holding cell in the custody of the Suffolk County Sheriff's Department. (Am. Compl., Docket Entry 14, ¶¶ 17-18.) Plaintiff apparently had a friendly conversation with Mr. Oddone, who Plaintiff later learned was accused of murdering an off-duty Suffolk County Sheriff's Department Correction Officer. (Am. Compl. ¶ 19.) Plaintiff asserts that, after that conversation, Defendants subjected him to excessive force. (Defs.' 56.1 Stmt. ¶ 1.)

Although Plaintiff filed a grievance seeking reimbursement for property that was lost on November 10, 2009 after he was taken to the hospital, Plaintiff did not file a grievance relating to the use of force. (Defs.' 56.1 Stmt. ¶¶ 2-3.) However, a witness to the alleged assault, Natalie Desir, informed Plaintiff's mother, Lillian Hubbs, of the

---

[1] The following facts are drawn from the parties' Local Rule 56.1 Statement ("56.1 Stmt.") and Counterstatement ("56.1 Counterstmt.") and the exhibits attached thereto and submitted therewith.

2

incident. (Pl.'s 56.1 Counterstmt., Docket Entry 33, ¶ 11.) Ms. Hubbs then called Plaintiff's criminal attorney, Christopher Cassar. (Pl.'s 56.1 Counterstmt. ¶ 12.) Ms. Hubbs also called the Suffolk County Correction Department at Yaphank Correctional Facility. (Pl.'s 56.1 Counterstmt. ¶ 13.) According to Ms. Hubbs, she was told to lodge her complaint with the internal affairs office at the Sheriff's Department. (Pl.'s 56.1 Counterstmt. ¶ 13.) She followed up with a subsequent phone call on November 17, 2009. (Pl.'s 56.1 Counterstmt. ¶ 17.) On November 11 or 12, 2009, Mr. Cassar also faxed and sent a letter to the Suffolk County Sherriff's Office requesting an investigation. (Pl.'s 56.1 Counterstmt. ¶¶ 14, 16.)

Plaintiff was seen for a medical evaluation on November 11, 2009. (Pl.'s 56.1 Counterstmt. ¶ 16.) An Internal Affairs investigation was conducted; investigators interviewed Plaintiff, Ms. Desir, and others; and personnel reviewed Plaintiff's medical records and other documents. (Pl.'s 56.1 Counterstmt. ¶¶ 20-22.) The investigation resulted in a five-page report and the investigation was closed. (Pl.'s 56.1 Counterstmt. ¶ 22.)

Plaintiff now raises claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for, inter alia, violation of his due process rights under the Fourteenth Amendment and violation of

3

his Eighth Amendment right to be free from cruel and unusual punishment.

## DISCUSSION

Defendants seek summary judgment, arguing that Plaintiff's claims are barred because Plaintiff failed to exhaust his administrative remedies as required and that he cannot recover against the County because he lacks evidence of a municipal policy or custom. The Court will first address the applicable legal standard before turning to Defendants' motion and the parties' arguments more specifically.

I. Legal Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v.

4

Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

II. Analysis

Defendants primarily assert that Plaintiff's claims are precluded because he did not exhaust his administrative remedies prior to bringing suit. The Court agrees.

Under the Prison Litigation Reform Act (the "PLRA"), an inmate must exhaust all available administrative remedies prior to commencing an action challenging the conditions of his

5

incarceration. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The PLRA exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 524-25.

The PLRA requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175–76 (2d Cir. 2006) (internal quotation marks omitted) (emphasis in the original) (quoting Woodford v. Ngo, 548 U.S. 81, 90–91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)). Thus, "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable

procedural rules,'--rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922, 166 L. Ed. 2d 798 (2007) (internal citations omitted) (quoting Woodford, 548 U.S. at 88).

Here, the Suffolk County Correctional Facility has a formal grievance program for inmates known as the Inmate Grievance Program ("IGP"). The Inmate Handbook specifies that, if an inmate has a problem, he should first attempt to resolve it with an officer assigned to the unit. (Inmate Handbook, Defs.' 56.1 Stmt. Ex. D, at 15.) If a resolution is not reached, the inmate may request a grievance form, which will then be forwarded to the Sergeant assigned to the housing unit upon completion. (Inmate Handbook at 15.) If the issue still is not resolved, the Housing Sergeant will forward the grievance to the Grievance Coordinator, who will conduct an investigation. (Inmate Handbook at 16.) The Handbook then goes on to detail the appeal process thereafter. (Inmate Handbook at 16.) "An inmate must file a grievance within (5) five days of the date of the act or occurrence giving rise to the grievance." (Inmate Handbook at 15.) Just below the explanation of the procedures, the Inmate Handbook notes: "THE FOLLOWING DECISIONS WILL NOT BE SUBJECT OF A GRIEVANCE AND THEREFORE MAY NOT BE APPEALED TO THE WARDEN OR THE CITIZENS POLICY AND COMPLAINT REVIEW COUNCIL . . .

Issues that are outside the Warden's control." (Inmate Handbook at 16 (emphasis in original).)

Plaintiff does not dispute that he failed to comply with the grievance procedures available at the Suffolk County Correctional Facility. This does not end the inquiry, however. "[W]hile the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply." Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004) (quoting Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)). In Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), the Second Circuit held that a "three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA." First, the court should determine "whether administrative remedies were in fact 'available' to the prisoner." Id. (quoting Abney v. McGinnis, 380 F.3d 663, 667-69 (2d Cir. 2004)). Second, the court should ask "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it" or "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. (citing Johnson v. Testman, 380 F.3d 691, 695-96 (2d Cir. 2004)). Third, the court "should consider whether 'special

circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" Id. (quoting Giano, 380 F.3d at 689-91).

Plaintiff asserts that his failure to exhaust should be excused. The Court will address each basis in turn.

A. Whether Administrative Remedies Were Available to Plaintiff

Plaintiff maintains that the Suffolk County Correctional Facility's administrative remedies were not available to him because he was assaulted outside of its jurisdiction. (Pl.'s Opp. Br., Docket Entry 33-3, at 9.) More specifically, he claims that, because he was assaulted by Suffolk County Deputy Sheriffs inside the courthouse, even if he had grieved it, it would have been referred to the Suffolk County Sheriff's Office Internal Affairs. (Pl.'s Opp. Br. at 9.) Defendants counter that the administrative remedies were available to him and that Plaintiff's failure to grieve cannot be excused due to his mere speculation that his grievance would have been denied. (Def.'s Br., Docket Entry 32-4, at 8-9.) The Court agrees with Defendants.

Initially, Defendants proffer admissible evidence in the form of an affidavit from the Grievance Coordinator at the Suffolk County Correctional Facility. (See Rosenblatt Aff., Docket Entry 32-12.) Craig Rosenblatt affirmed that

> [a]ny grievance filed by an inmate within five (5) days of the act or occurrence giving rise to the grievance, concerning an act or occurrence that took place while the inmate was detained in the County Court Holding facility would be accepted by the grievance coordinator and a determination would be made regarding what action should be taken to resolve and rectify the matter.

(Rosenblatt Aff. ¶ 10.)

"The test for deciding the availability of grievance procedures is an objective one: that is, the court asks whether 'a similarly situated individual of ordinary firmness' would have deemed them available." White v. Dep't of Corr., No. 11-CV-9254, 2013 WL 1209567, at *3 (S.D.N.Y. Mar. 21, 2013) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)). Here, while the Inmate Handbook does reference issues outside of the warden's control, that portion relates to appeals, not to commencement of the grievance process, and there is nothing to suggest that a similarly situated individual would have deemed the incident to be outside the warden's control. (Inmate Handbook at 16.)

Moreover, although Plaintiff takes issue with the fact that Mr. Rosenblatt was not disclosed in the parties' Joint Pre-Trial Order (Pl.'s Opp. Br. at 10 n.2), Plaintiff proffers merely speculation to suggest that his grievance would not have

been accepted or would have been futile.[2] This is insufficient. See Magassouba v. Cross, No. 08-CV-4560, 2010 WL 1047662, at *10 (S.D.N.Y. Mar. 2, 2010) ("An inmate's perception, based on past experience, that the grievance process will be unsuccessful, does not relieve an inmate of the exhaustion requirement.") (collecting cases), adopted by 2010 WL 4908670 (S.D.N.Y. Nov. 30, 2010); cf. Harris v. NYC Dep't of Corr. & The Inst. Mental Health Unit (St. Barnabas), No. 00-CV-7164, 2001 WL 845448, at *4 (S.D.N.Y. July 25, 2001) ("Such an assertion [that remedies were unavailable], with no support, in light of the elaborate statutory grievance scheme, is simply insufficient to overcome the motion to dismiss.").

B. Whether Defendants Have Forfeited the Defense of Non-Exhaustion

Even if the grievance process was available, Plaintiff maintains that he should be excused from non-exhaustion because Defendants forfeited their affirmative defense by responding affirmatively and conducting an internal investigation without raising any deficiencies in the "form, content or timeliness of Mr. Cassar's [or] Ms. Hubbs' complaint prior to litigation." (Pl.'s Opp. Br. at 14.) The Court disagrees.

---

[2] While information Plaintiff received from his mother, or maybe even other detainees, may have led to Plaintiff's belief that administrative remedies were not available to him, there is no evidence to suggest that this was anything other than Plaintiff's belief.

11

First, even where officials are aware of the problem or issue, the plaintiff must still formally exhaust administrative remedies. See Williams v. Suffolk Cnty., No. 11-CV-5198, 2012 WL 6727160, at *4 (E.D.N.Y. Dec. 28, 2012) (finding that the plaintiff's complaint to Internal Affairs did not constitute proper exhaustion). While it is undisputed that both Plaintiff's mother and his criminal attorney made complaints to the Internal Affairs Section of the Suffolk County Sheriff's Office and that an investigation was conducted, this means only that officials may have been aware of the alleged assault on Plaintiff. Awareness of the substance of a complaint, however, does not equate to compliance with procedural requirements. See Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007); Hill v. Tisch, No. 02-CV-3901, 2009 WL 3698380, at *8 (E.D.N.Y. Oct. 30, 2009); Toomer v. Cnty. of Nassau, No. 07-CV-1495, 2009 WL 1269946, at *9 (E.D.N.Y. May 5, 2009).

Second, the internal investigation is separate and apart from the grievance process and cannot excuse compliance with grievance procedures. There is nothing to suggest that Defendants, or anyone else, stated that the investigation would substitute for the grievance procedures or at all refused to allow Plaintiff to exhaust. See Toomer, 2009 WL 1269946, at *7 ("Plaintiff's conclusory assertion that he was led to believe his Complaint was not [a] grievable issue because [it was]

12

reported to and investigated by [the] Sheriff's Bureau of Investigation, without any specific allegations or evidence of how defendants led plaintiff to incorrectly believe such, is insufficient . . . ." (internal quotation marks and citation omitted)). At best, Plaintiff argues that, when his mother called about the assault, she was told to talk with Internal Affairs. This is not the type of scenario sufficient to find that the defendants were estopped from raising non-exhaustion. See, e.g., Bailey v. Fortier, No. 09-CV-0742, 2012 WL 6935254, at *7 (N.D.N.Y. Oct. 4, 2012) (concluding that the defendant would not be estopped because, even where other officials refused to provide the plaintiff with necessary forms and cooperation, the defendant did not participate in such refusal), adopted by 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013); Hargrove v. Riley, No. 04-CV-4587, 2007 WL 389003, at *9 (E.D.N.Y. Jan. 31, 2007) ("[D]efendants have not threatened [plaintiff] or engaged in other conduct preventing him from exhausting the available administrative remedies.").

Plaintiff cites to cases in which the grievance was untimely, but officials nonetheless addressed the substantive merits of the complaint. (Pl.'s Opp. Br. at 14-15.) "In these circumstance[s], '[c]ourts of this circuit have found that prison officials may not raise a non-exhaustion defense based on the alleged untimeliness of a prisoner's filing where they

13

accepted that filing and considered it on the merits.'" Howard v. Bhatti, No. 08-CV-2645, 2010 WL 5067574, at *4 (E.D.N.Y. Dec. 6, 2010) (quoting Tyree v. Zenk, No. 05-CV-2998, 2007 WL 527918 (E.D.N.Y. Feb. 14, 2007)). Here, however, there was no untimely grievance, but rather no grievance at all.

C.  Whether Special Circumstances Exist

Finally, Plaintiff asserts that his non-exhaustion should be excused because special circumstances exist. Specifically, he maintains that he reasonably believed that the Suffolk County Correctional Facility's administrative remedies were not available. (Pl.'s Opp. Br. at 12.) The Court disagrees.

"[A]mong the circumstances that may be considered 'special' include those where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable." Toomer, 2009 WL 1269946, at *8. Plaintiff relies, in part, upon his alleged understanding that the issues he sought to grieve were outside of the warden's control. (See Pl.'s Opp. Br. at 13 (referring to his "reasonable interpretation of the grievance procedures").) However, Plaintiff's deposition testimony demonstrates that he did not interpret the grievance procedure

at all at the relevant time. (Pl.'s Dep., Defs.' 56.1 Stmt. Ex. C, at 50.)

Moreover, Plaintiff also cites to information from his mother that she was told to lodge a complaint with Internal Affairs and to the actual investigation to show that he reasonably believed administrative remedies were unavailable. As already stated, though, the Internal Affairs investigation was independent of the grievance procedure and this case contains virtually no similarity to those in which courts have found special circumstances. See Brownell v. Krom, 446 F.3d 305, 313 (2d Cir. 2006) (finding special circumstances where prison official refused to investigate and, after the plaintiff conducted his own investigation, reasonably believed that he could not raise the new facts in administrative proceedings); contra Rodriguez v. Mount Vernon Hosp., No. 09-CV-5691, 2010 WL 3825736, at *18 (S.D.N.Y. Sept. 7, 2010) ("[Plaintiff's] writing a letter to Dr. Wright instead of filing a formal grievance and his allegedly being told that it would be futile to appeal his grievance do not excuse or preclude him from exhausting administrative remedies."), adopted by 2010 WL 3825715 (S.D.N.Y. Sept. 30, 2010).

In addition, Plaintiff filed a grievance regarding his alleged lost property. (Defs.' 56.1 Stmt. ¶ 2.) This demonstrates that Plaintiff had at least some concept that the

15

grievance procedures may have been available to him. See Toomer, 2009 WL 1269946, at *8 (finding a lack of special circumstances where the plaintiff had filed a prior grievance).

Thus, the Court finds that Plaintiff failed to exhaust his administrative remedies, as required, and that his failure is not excused.

D.  Dismissal With Prejudice

The only remaining issue, then, is whether this case should be dismissed with or without prejudice. Generally, a prisoner's failure to exhaust his administrative remedies requires dismissal of the action without prejudice. See Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1998); Davis v. Reilly, 324 F. Supp. 2d 361, 366 (E.D.N.Y. 2004). "This is so even when the issue is decided on a motion for summary judgment." Mateo v. Corebine, No. 09-CV-4811, 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010).

There are, however, situations where dismissal with prejudice is appropriate, such as where the prisoner has been transferred to another correctional facility or administrative remedies are no longer available. See Davis, 324 F. Supp. 2d at 366; see also Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2003). Here, although it is likely that Plaintiff has been transferred, the parties have not addressed this issue and the record is incomplete in this regard. Thus, given the general rule,

Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. "In the event that plaintiff has exhausted or does exhaust his administrative remedies fully [if possible], he may refile his complaint and reinstitute his suit." Mateo, 2010 WL 3629515, at *7.

The Court also notes that this is a full dismissal of the action. Although the Suffolk County Sheriff's Department has not appeared in the action, it is not a suable entity and claims against it are duplicative of those against the County. See Hayes v. Cnty. of Sullivan, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012) (finding that the Sullivan County Sheriff's Department is not a suable entity); Melendez v. Nassau Cnty., No. 10-CV-2516, 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010) (finding that the Nassau County Sheriff's Department Division of Correction is not a suable entity); Barreto v. Suffolk Cnty., No. 10-CV-0028 (JS)(AKT), 2010 WL 301949, at *2 (E.D.N.Y. Jan. 20, 2010) (finding that the Suffolk County Sheriff's Department is not a suable entity). Moreover, given that the Court has found a lack of exhaustion for individual liability, liability against the County cannot stand. See Daly v. Ragona, No. 11-CV-3836, 2013 WL 3428185, at *10 (E.D.N.Y. July 9, 2013) (declining to impose liability against the County where claims against the individual County defendants could not stand).

CONCLUSION

Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies is GRANTED, and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. If exhaustion remains a possibility, Plaintiff may re-file his complaint upon exhaustion. The Clerk of the Court is directed to enter judgment accordingly and the mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: June 9, 2014
       Central Islip, NY